Mr. Jason G. Reynolds Attorney for City of Daytona Beach Shores Post Office Box 9670 Daytona Beach, Florida 32120
Dear Mr. Reynolds:
You have asked on behalf of the City of Daytona Beach Shores substantially the following question:
May the electors in the City of Daytona Beach Shores approve a referendum amending the city charter to require that all future bonds issued by the city be approved by referendum?
In sum, I am of the following opinion:
Section 166.031, F.S., would allow the city's charter to be amended to require referendum approval for the issuance of all municipal bonds.
You state that a referendum is scheduled wherein the electors will decide whether the city charter should be amended to require that all future issues of municipal bonds be approved in a referendum. The question arises whether an amendment may be made which limits the city's ability to issue bonds.
Section 2(a), Art. VIII, State Const., provides that "[m]unicipalities may be established or abolished and their charters amended pursuant to general or special law." (e.s.)
Section 166.031(1), F.S., in pertinent part, provides:
The governing body of a municipality may, by ordinance, or the electors of a municipality may, by petition signed by 10 percent of the registered electors as of the last preceding municipal general election, submit to the electors of said municipality a proposed amendment to its charter, which amendment may be to any part or to all of said charter except that part describing the boundaries of such municipality. The governing body of the municipality shall place the proposed amendment contained in the ordinance or petition to a vote of the electors at the next general election held within the municipality or at a special election called for such purpose.
Furthermore, s. 166.031(3), F.S., allows a municipality to amend its charter pursuant to s. 166.031, F.S., notwithstanding any charter provisions to the contrary. Thus, the only limitation in s. 166.031, F.S., is placed upon amending that part of the charter describing the boundaries of the municipality.[1] It should be noted, however, that a municipality's charter may not be amended to provide that no ad valorem tax may be levied without referendum approval.[2]
In AGO 82-101, this office determined whether a municipal charter could be amended pursuant to s. 2(a), Art. VIII, State Const., and s. 166.031, F.S., to limit or restrict the exercise of specific corporate, legislative and governmental powers. In that opinion, citizens objected to a city's practice of transferring revenues from water and sewer operations to the city's general fund to be used for general municipal operating purposes. Based upon the authority in s. 2(a), Art. VIII, State Const., and s. 166.031, F.S., this office concluded that the charter could be amended to prohibit the transfer of any utility revenues to the general fund, thereby limiting the city's power.[3]
Section 12, Art. VII, State Const., provides:
Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only: (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.
Thus, the Florida Constitution requires referendum approval when a municipality issues revenue bonds to finance or refinance capital projects authorized by law. There is no indication, however, that this constitutional requirement of a referendum operates to prohibit referendums to approve other bond issues.[4]
In light of the above, it is my opinion that the municipal charter may be amended pursuant to s. 166.031, F.S., to require referendum approval of bond issues.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] But see, s. 2(c), Art. VIII, State Const.(municipal annexation of unincorporated territory, merger of municipalities, and exercise of extra-territorial powers by municipalities is governed by general or special law), and s. 166.021(3)(a), F.S. (municipality may not enact legislation concerning annexation, merger, and the exercise of extra-territorial power, which requires general or special law pursuant to s. 2[c], Art. VIII, State Const.).
[2] See, AGO 86-89, citing to s. 195.207, F.S., which expressly prohibits any charter limitations upon a municipality's authority to levy ad valorem taxes or utility service taxes.
[3] Cf., AGO 75-223 stating that although the "Municipal Home Rule Powers Act" repealed or turned into municipal ordinances provisions in a city's charter as they existed on the effective date of the act, the charter was restored to its original status by referendum subsequent to the passage of the act and may now only be amended as provided in s. 166.031, F.S.
[4] Cf., Wohl v. State, 480 So.2d 639 (Fla. 1985), in which The Supreme Court of Florida concluded that a municipal charter provision authorizing the issuance of revenue bonds subject to approval by referendum when required under the Constitution, did not operate to require a referendum for refunding bonds.